IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
(GREENVILLE DIVISION)

| | |
|---|---|
| **KALEB NELSON,** individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**PMC HOME & AUTO INSURANCE AGENCY, LLC,** a Florida company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Kaleb Nelson ("Nelson" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant PMC Home & Auto Insurance Agency, LLC ("PMC" or "Defendant") to stop PMC from violating the Telephone Consumer Protection Act and the South Carolina Telephone Privacy Protection Act by making unsolicited, autodialed calls to consumers without their consent, including calls to consumers registered on the national Do Not Call registry, and to otherwise obtain injunctive and monetary relief for all persons injured by PMC's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### INTRODUCTION

1. PMC provides extended warranty contracts to consumers.[1]

2. PMC operates using the d/b/a Protect My Car.

3. PMC relies heavily on leads generated by third parties.

---

[1] https://www.linkedin.com/company/protectmycar-com/about/

4. PMC uses an autodialer to calls these leads even when it does not have consent to call them, regardless of whether their phone numbers are registered on the national Do Not Call registry ("DNC").

5. In Plaintiff's case, PMC made repeated unsolicited, autodialed calls to Plaintiff, despite Plaintiff having registered his phone number with the DNC to prevent such calls.

6. To make matters worse, PMC continued to call Plaintiff even after Plaintiff made it clear he wanted the calls stopped.

7. In response to these calls, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease placing unsolicited calls to consumers using an automatic telephone dialing system without consent and otherwise calling consumers registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

8. Plaintiff Nelson is, and at all times relevant to the complaint was, a Greenville, South Carolina resident.

9. Defendant PMC is a Florida limited liability company headquartered in St. Petersburg, Florida. Defendant conducts business throughout this District and throughout the United States.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. §227 ("TCPA"). This Court has supplemental jurisdiction over Plaintiff's claim under the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-70 ("SCTPPA") claim pursuant to 28 U.S.C. § 1367(a), because the SCTPPA claim arises out of the same facts and circumstances as Plaintiff's TCPA claim.

11. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does significant business in this District and the state of South Carolina, and because the wrongful conduct giving rise to this case was directed to Plaintiff at his South Carolina telephone number in this District.

## COMMON ALLEGATIONS

### PMC Markets its Products and Services by Making Autodialed Calls to Consumers' Without Consent, Regardless of Whether Their Numbers were Registered on the DNC

12. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines," and for all calls to numbers registered on the DNC. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶¶ 2, 20-21 (Feb. 15, 2012) (harmonizing consent requirements for autodialed and prerecorded calls with consent requirement for calls to numbers registered on the DNC); *see* 16 CFR 310.4(b)(1) (establishing express written consent requirement for calls to DNC numbers).

13. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to making autodialed solicitation calls to consumers, including consumers, like Plaintiff, registered on the DNC.

14. In placing the calls that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS" or "autodialer") in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting

3

answered calls to then available callers and disconnecting the rest (all without human intervention).

15. PMC expressly states in various contexts that it contacts consumers using an autodialer. For example, PMC on its webpage, disclaims that PMC may contact consumers by phone, "which may include artificial or pre-recorded calls and/or text messages, delivered via automated technology[.]"[2]

16. Similarly, a former Sales and Marketing Specialist for PMC references the predictive dialer systems that he operated while at PMC in his Linkedin profile:



**Sales And Marketing Specialist**
Protect My Car
Nov 2015 – Jan 2017 · 1 yr 3 mos
Clearwater, FL

· Operated multiple predictive dialer systems, oversaw data acquisition, and specialized in lead and list management
· Revised, developed, and implemented new lead generation methods and sales strategies.
· Directed sales force of approximately 250 agents, including sales managers, lead generators, and sales representatives to develop and numerous custom marketing campaign.
· Restructured operations, resulting in reduced cost of overhead and increased ROI.
· Exemplified strong moral values and ethical business practices, leading to an increase in the company's overall customer retention and business referrals. See less [3]

17. PMC uses many different phone numbers to make autodialed telemarketing calls, including 864-932-3323. Upon investigation, when calling 864-932-3323 a prerecorded message confirms the use of a dialing system stating:

"If you are calling to have your telephone number added to our company's do not call list, please press '1' now. Protect My Car will process your request to have your number removed within 24 to 48 hours, so please allow for that processing to stop any further calls."

---

[2] https://protectmycar.com/extended-warranty
[3] https://www.linkedin.com/in/josh-johnson-6318b211a/

18. Not surprisingly, there are a plethora of online complaints about Defendant's calls to consumers who never gave consent to be called, including consumers that requested Defendant stop calling or that may have been registered on the national DNC:

- "This company will not stop calling me even though I have asked several times to be removed from their advertising list. They robocall 3 Times a day! The way this company contacts me is not only frustrating and annoying, it is borderline HARRASSMENT. Every time I block one number they call me from a different one. Despite all of my requests for them to remove me from their contact list, they continue to robocall me at all times of the day and won't let me get off the phone unless I hang up on them. This is an outrage!"[4]
- "After I declined service they call me every week even after requesting for it to stop and that I get marked as do not call. I initiated the interaction with this company to get a Quote for my car. After I Decided I didn't want to accept the service, they continued to call me multiple times a week from different phone numbers even after I asked that they do not call me any more and they put me on a do not call list."[5]
- "Spam robo caller for 'Protect My Car'. Probably trying to sell an expensive extended auto warranty."[6]
- "Keeps calling a couple of times a day. Leaves no message."[7]
- "This number call me today and yesterday. Once I picked up, it hung up."[8]
- "Called and hung up when I answered. BLOCKED!!!"[9]
- "FROM A COMPANY CALLED 'PROTECT MY CAR' SO I WENT AHEAD AND BLOCKED."[10]
- "Keeps calling several times a day"[11]
- "Automobile protection company. Will not stop calling even when asked"[12]
- "They don't stop calling me"[13]
- "Will call from multiple random numbers. Very aggressive people"[14]

---

[4] https://www.bbb.org/us/fl/clearwater/profile/auto-service-contract-companies/protect-my-car-0653-90067737/complaints
[5] *.Id.*
[6] https://800notes.com/Phone.aspx/1-423-800-6827
[7] *Id.*
[8] *Id.*
[9] *Id*
[10] *Id.*
[11] *Id.*
[12] https://www.whitepages.com/phone/1-423-800-6827
[13] *Id.*
[14] *Id.*

5

- "Protect my car extended warranty. Don't want, don't need"[15]

## PLAINTIFF'S ALLEGATIONS

### PMC Repeatedly Called Plaintiff Without Consent, Despite Plaintiff Having Registered His Phone Number on the DNC

19. On November 3, 2018, Plaintiff registered his phone number on the DNC and it is not associated with any business.

20. Beginning in approximately November of 2018, Plaintiff Nelson began to receive autodialed calls from Defendant. The calls were solicitations for an extended vehicle warranty.

21. Plaintiff made it clear during Defendant's calls in in November and December 2018 that he was not interested in purchasing an extended warranty, that he had registered his phone number on the DNC, and that he wanted the calls to stop.

22. Notwithstanding, Defendant continued to make autodialed calls to Plaintiff more than 30 days after Plaintiff registered his phone number on the DNC.

23. For example, on December 11, 2018, Plaintiff received an autodialed call from Defendant using phone number 864-332-4070. The caller identified himself as working for Protect My Car. When the caller tried to sell Plaintiff an extended vehicle warranty, Plaintiff notified the caller that he had previously demanded that PMC stop calling him.

24. Plaintiff received another call from Defendant on December 19, 2018 this time using phone number 864-932-3323. The caller, "Mario," identified himself as being with PMC and tried sell Plaintiff an extended vehicle warranty. Plaintiff again notified the caller that he had previously demanded that PMC stop calling him.

25. Plaintiff noted that the calls he received from PMC began with a notable, long pause and silence until a live agent came on the line and to make the sales pitch.

---

[15] *Id.*

6

26. Plaintiff does not have a relationship with PMC or any of its affiliated companies, and has never consented to any contact from Defendant.

27. PMC's unauthorized telephone calls have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Nelson's use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

28. Seeking redress for these injuries, Nelson, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited marketing calls made using an autodialer and/or to consumers whose phone numbers are registered on the DNC.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From PMC's Calls**

29. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following four Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called, (2) using the same dialing equipment used to call Plaintiff, and (3) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) Defendant does not claim to have obtained prior express written consent.
>
> **Autodialed Stop Class**: All persons in the United States who from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called, (2) using the same dialing equipment used to call Plaintiff, (3) after the person told Defendant to stop calling.
>
> **Do Not Call Registry Class**: All persons in the United States who during the relevant limitations period: (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) where the person's phone number had been listed on the national Do Not Call registry for at least thirty days, (4) for the purpose of selling Defendant's products and services,

7

and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiff, or (b) Defendant does not claim to have obtained prior express written consent.

**Internal Do Not Call Class**: All persons in the United States who during the relevant limitations period: (1) Defendant (or an agent acting on behalf of Defendant) called more than one time in a twelve-month period, (2) for substantially the same reason that Defendant called Plaintiff.

**SCTPPA Class**: All persons in South Carolina who during the relevant limitations period: (1) Defendant (or an agent acting on behalf of Defendant) called, (2) for substantially the same reason that Defendant called Plaintiff, (3) after the person's phone number had been listed on the national Do Not Call registry.

The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

30. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

31. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) whether Defendant utilized an automatic telephone dialing system to make its calls to Plaintiff and the members of the Classes;

    (b) whether Defendant systematically made multiple telephone calls to Plaintiff and consumers whose phone numbers were registered with the DNC;

8

(c) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(d) whether Defendant failed to implement policies and procedures for maintaining a list of persons who request not to be called by Defendant before engaging in telemarketing;

(e) whether Defendant's conduct constitutes a violation of the TCPA; and

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

32. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

33. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision

by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Nelson and the Autodialed No Consent Class)

34.     Plaintiff repeats and realleges paragraphs 1 through 33 of this Complaint and incorporates them by reference herein.

35.     Defendant and/or its agents made unwanted solicitation telephone calls to phone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

36.     These solicitation calls were made *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation calls.

37.     Defendant did not have consent from the Plaintiff or the Autodialed No Consent Class to make these calls.

38.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Nelson and the Autodialed Stop Class)

39.     Plaintiff repeats and realleges paragraphs 1 through 33 of this Complaint and incorporates them by reference herein.

40.     Defendant and/or its agents made unwanted solicitation telephone calls to phone numbers belonging to Plaintiff and the other members of the Autodialed Stop Class using

equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

41. These solicitation calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Autodialed Stop Class.

42. Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Stop Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### THIRD CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Nelson and the Do Not Call Registry Class)

43. Plaintiff repeats and realleges the paragraphs 1 through 33 of this Complaint and incorporates them by reference herein.

44. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

45. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[16]

46. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or

---

[16] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

11

entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

47. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

48. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, phone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective phone numbers on the DNC, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

49. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Do Not Call Registry Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**FOURTH CAUSE OF ACTION**

**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Nelson and the Internal Do Not Call Class)**

50. Plaintiff repeats and realleges the paragraphs 1 through 33 of this Complaint and incorporates them by reference herein.

51. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

52. Defendant made marketing calls to Plaintiff and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

53. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

54. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**FIFTH CAUSE OF ACTION**
**South Carolina Telephone Privacy Protection Act**
**(Violation S.C. Code § 37-21-70)**
**(On Behalf of Plaintiff Nelson and the SCTPPA Class)**

55. Plaintiff repeats and realleges paragraphs 1 through 33 of this Complaint and incorporates them by reference herein.

56. Defendant and/or its agents made unwanted solicitation telephone calls to phone numbers belonging to Plaintiff and the other members of the SCTPPA Class.

57. These solicitation calls were made *en masse* without the consent of the Plaintiff and the other members of the SCTPPA Class to receive such solicitation calls.

58. Defendant did not have consent from the Plaintiff or the SCTPPA Class to make these calls.

59. Defendant has, therefore, violated S.C. Code § 37-21-70. As a result of Defendant's conduct, Plaintiff and the other members of the SCTPPA Class are each entitled to a

minimum of $1,000 in damages, and up to $5,000 in damages, for each violation and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Nelson, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages, attorneys' fees, and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An order declaring that Defendant's actions, as set out above, violate the SCTPPA;

e) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

f) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial. Respectfully Submitted,

**KALEB NELSON**, individually and on behalf of those similarly situated individuals

Dated: May 14, 2019

/s/ C. Tyson Nettles
C Tyson Nettles, Esq. (#9569)
Nettles Law Firm
PO Box 22007
Charleston SC 29412
tyson@tysonnettleslaw.com
Telephone: (843) 278-8416

*Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127

15

Telephone: (305) 469-5881

*Trial Counsel*

*Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

*\*Pro Hac Vice application forthcoming*