# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| **KALEB NELSON,** an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>**PMC HOME & AUTO INSURANCE AGENCY, LLC,** a Florida company,<br><br>*Defendant.* | Case No. 6:19-cv-01387-TMC<br><br>**DEFENDANT'S MOTION TO STAY PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW** |

Defendant, PMC Home & Auto Insurance Agency, LLC ("PMC"), by and through its undersigned counsel, files this Motion to Stay proceedings in this action pending the decision of the United States Supreme Court in *Barr v. American Association of Political Consultants*, No. 19-631.[1]

## PRELIMINARY STATEMENT

In their First Amended Complaint, Plaintiff Kaleb Nelson alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). Plaintiff contends that Defendant violated §§ 227(b)(1)(A) and (c)(5) of the TCPA. *See* Dkt. No. 25 at ¶¶40, 46, 51. At present, PMC's Motion to Strike, which it demonstrates Plaintiff's inability to certify its

---

[1] Defendant notes that it has a pending Motion to Strike Class Allegations (Dkt. No. 29) (the "Motion to Strike") and a separate Motion to Stay Discovery Pending a ruling on the Motion to Strike (Dkt. No. 30). The filing of this Motion to Stay does not waive any of the defenses or challenges previously asserted by PMC. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, No. RWT-07-cv-1203, 2009 WL 10727976, at *6 (D. Md. Jan. 8, 2009) (holding that a motion to stay "is not a responsive pleading capable of waiving a Rule 12(b)(3) venue defense"); *see also Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 678 (11th Cir. 2009) ("[A] motion to stay is neither a responsive pleading nor a motion made under Rule 12, and thus does not operate as a waiver of [a] defense," including lack of personal jurisdiction, "under Rule 12(h)."); *Toenniges v. Ammons*, No. 1:09-CV-165 WLS, 2014 WL 66589, *3 (M.D. Ga. Jan. 8, 2014) (observing that the filing of a motion to stay does "not constitute a waiver of [the] ability to challenge service of process"), *aff'd sub nom. Toenniges v. Georgia Dep't of Corr.*, 600 F. App'x 645 (11th Cir. 2015).

proposed classes, is pending before the Court.

Following a recent decision to grant *certiorari*, the United States Supreme Court is poised in the next five or so months to determine whether the TCPA, and in particular at least one of the provisions under which this lawsuit has been brought, remains valid law or, if the Supreme Court agrees with the Fourth Circuit's ruling that § 227(b)(1)(A)'s exemption for calls that relate solely to efforts to collect a debt owed to or guaranteed by the United States violates the Free Speech Clause of the First Amendment to the United States Constitution and is therefore unconstitutional, whether the entire provision is invalidated in full.  *See Barr v. American Ass'n of Political Consultants*, No. 19-631, 2020 WL 113070 (U.S. Jan. 10, 2020) ("*AAPC*"); *see also Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 166-68, 171 (4th Cir. 2019).  PMC intends to assert that First Amendment defense in any Answer, as it did in response to the original Complaint (Dkt. No. 11), should one be required to be filed in this case.

Respondents in *AAPC* expressly sought review of the severability ruling, and contend, as PMC contends here, that the underlying restrictions on speech and the use of an automatic telephone dialing system or a prerecorded voice in § 227(b)(1)(A) should be invalidated as unconstitutional.  *See Barr v. American Ass'n of Political Consultants*, No. 19-631, 2019 WL 6609436, *2 (U.S. Dec. 4, 2019) (Brief for Respondents in Support of *Certiorari*).  Any such conclusion would presumably apply equally to the TCPA's similar restrictions on speech and the use of a prerecorded voice on calls to residential landlines codified at § 227(b)(1)(B), which are subject to the same "government debt-collection exemption" at issue in *AAPC*.

The Supreme Court is expected to rule by the end of this term in June 2020.  That ruling may, as respondents in the appeal seek, invalidate the statute that is the source of Plaintiff's sole cause of action.  Under these circumstances, the interests of judicial economy and the public

welfare as well as the lack of any prejudice to Plaintiff weigh heavily in favor of staying the proceedings in this action pending the outcome of *AAPC*.

## ARGUMENT

### I. THE APPLICABLE LEGAL STANDARD

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Consequently, a district court may "find it is efficient for its own docket and the fairest course for the parties to enter enter a stay of an action before it pending resolution of independent proceedings which bear upon the case." *Brown-Thomas v. Hynie,* 1:18-CV-02191-JMC, 2019 WL 1043724, at *3 (D.S.C. Mar. 5, 2019), *review denied*, 1:18-CV-02191-JMC, 2019 WL 2442346 (D.S.C. June 12, 2019) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 862 (9th Cir. 1979)). Where there is "substantial overlap between the legal issues in the case and those before the Supreme Court," a stay may be warranted. *Intl. Refugee Assistance Project v. Trump,* 323 F. Supp. 3d 726, 732 (D. Md. 2018) *(*quoting Order at 7-8*, Pars Equality Ctr. v. Trump,* No. 17-cv-0255-TSC (D.D.C. Mar. 2, 2018) (EFC No. 143)). Such stays are routinely issued when a pending Supreme Court ruling may be dispositive or significantly affect the case being stayed.[2]

---

[2] *See*, *e.g.*, *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1247 (11th Cir. 2011); *Assoc. for Disabled Americans, Inc. v. Fla. Int'l Univ.,* 405 F.3d 954, 956 (11th Cir. 2005); *Barnes v. CS Mktg. LLC*, No. 19-24218-CIV, 2020 WL 30373, at *3 (S.D. Fla. Jan. 2, 2020); *Saleh v. Me Bath Spa Experience, LLC*, No. 17-CV-62322, 2018 WL 398325, *4 (S.D. Fla. Jan. 12, 2018); *Ricks v. Allied Interstate, LLC*, No. 3:16-CV-00205-HES-PDB, 2016 WL 4505173 (M.D. Fla. July 11, 2016); *Shahin v. Synchrony Fin., et al.*, No. 8:15-cv-02941-MSS-EAJ, 2016 WL 4502461 (M.D. Fla. Apr. 12, 2016); *Luster v. Sterling Jewelers*, No. 1:15–cv–2854, 2015 WL 9255553, *3 (N.D. Ga. Dec. 17, 2015); *Mackiewicz v. Nationstar Mortg., LLC*, Case No. 6:15-cv-00465, 2015 WL 11983233 (M.D. Fla. Nov. 10, 2015); *Colby v. Publix Super Mkts., Inc.,* No. 2:11-CV-590-RDP, 2012 WL 2357745, *2-3 (N.D. Ala. 2012); *Bainbridge v. Tuter*, No. 8:99-CV-2681-T-27TBM, 2004 WL 5579425, *1 (M.D. Fla. Sept. 24, 2004); *Held v. Davis*, 778 F. Supp. 527, 528 (S.D. Fla. 1991); *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1557 (M.D. Fla. 1987); *Sigvartsen v. Smith Barney Harris Upham &*

3

*See Hickey v. Baxter,* 833 F.2d 1005 (4th Cir.1987) (unpublished table decision) (affirming district court's order staying proceedings pending Supreme Court resolution of relevant issues); *Trump,* 323 F. Supp. 3d 726, 732 (granting a stay where "resolution of the issues before the Supreme Court will likely have a direct impact on the future course of the case").

In determining whether to grant a stay, a court may consider the following factors: "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the case is in fact stayed."  *Hynie,* 2019 WL 1043724, at *3 *(*quoting *Mitchell v. Lonza Walkersville, Inc.,* C/A No. RDB–12–3787, 2013 WL 3776951, at *2 (D. Md. July 17, 2013)).  The proponent of a stay has the burden of proving the requested stay is justified. *See Clinton v. Jones,* 520 U.S. 681, 708 (1997).

## II.     THE PROCEEDINGS SHOULD BE STAYED PENDING THE RULING IN *AAPC*

The applicable factors all weigh in favor of granting a relatively brief stay of the proceedings of, at most, five months pending the Supreme Court's ruling in *AAPC*.  If the restrictions of 47 U.S.C. § 227(b)(1)(A) and (B), which are the bases of Plaintiff's claims, (*see* Dkt. No. 17 at ¶ 95), and both of which contain the "government debt collection" exemption at issue in *AAPC*, are invalidated as unconstitutional, that would be the end of this case.  Plainly, a court cannot enforce an unconstitutional statute.

### A.     A Decision in *AAPC* is Imminent and May Dispose of this Suit

The requested stay will not be immoderate or indefinite in duration.  A stay is not immoderate or indefinite in duration where "[t]he Supreme Court has already granted *certiorari*," because that "means . . . a decision is imminent within a year." *Boise v. ACE USA, Inc.*, No. 15-CIV-21264, 2015 WL 4077433, *6 (S.D. Fla. July 6, 2015).  Since the Supreme

---

*Co.*, No. 84-540-CIV-T-15, 1985 WL 8033, *1 (M.D. Fla. May 31, 1985).

Court has granted *certiorari* in *AAPC*, this standard is met.  Moreover, according to a 2015 article from the Duke Law Review, which sampled 7,219 cases decided by the United States Supreme Court between 1946 and 2012, 99 percent of Supreme Court cases are decided in the same term in which *certiorari* is granted.  Lee Epstein, *et al.*, *The Best for Last: The Timing of U.S. Supreme Court Decisions*, 64 Duke L.J. 991, 993 nn.5 & 6 (2015).  It is therefore reasonable to expect a ruling in *AAPC* by the end of June 2020, when the Supreme Court's current term will end.  Such a stay of, at most, five months cannot be deemed to be of indefinite or immoderate length.

If the Supreme Court finds that the prohibitions on the use of automatic telephone dialing systems or prerecorded voices set forth in § 227(b)(1)(A) or (B) is an unconstitutional restriction on speech that must be severed from the TCPA, then Plaintiff's claims would be extinguished.  Simply put, "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."  *Norton v. Shelby County*, 118 U.S. 425, 442 (1886).  Both § 227(b)(1)(A) and § 227(b)(1)(B) contain the "government debt collection" exception that the Fourth Circuit deemed to violate the First Amendment, and the exception applies both to the TCPA's restriction on "using any automatic telephone dialing system or an artificial or prerecorded voice" on a call to, *inter alia*, cellular telephones, (47 U.S.C. § 227(b)(1)(A)), and to the restriction on "using an artificial or prerecorded voice to deliver a message" on a "call to any residential telephone line," (47 U.S.C. § 227(b)(1)(B)).  Thus, the question of whether the Fourth Circuit's invalidation of only the "government debt collection" exemption was correct, or if the underlying restrictions of § 227(b)(1) that are also at issue in this case should also be invalidated, will have direct and potentially dispositive application to this lawsuit.

As a general matter, when concluding that an exception to a speech restriction shows that the restriction is unconstitutional, courts have consistently invalidated the restriction – as relevant in this case, 47 U.S.C. § 227(b)(1)'s prohibition on the use of prerecorded voices – and not just the exception (because keeping the restriction in place would, ironically, result in more restricted speech).[3]  The Eleventh Circuit recently suggested that it believes the entire law may be invalid on this ground in a case that did not involve any attempts to collect debt issued or guaranteed by the United States.  *See Glasser v. Hilton Grand Vacations Co., LLC*, No. 18-14499, 2020 WL 415811, *5 (11th Cir. Jan. 27, 2020) ("[H]ow could it be consistent with the First Amendment to make exceptions for calls with a specific content, such as the exception for calls about government debts?") (citing *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 169-171 (4th Cir. 2019)).  Thus, it is hardly a far-fetched notion that the Supreme Court may rule in a manner that will lead to the invalidation of the TCPA provisions at issue in this lawsuit.

It is hard to imagine a scenario that would be more dispositive to the case at bar than for the sole basis for Plaintiff's claim to be ruled unconstitutional, and thus unenforceable. Numerous district courts have stayed TCPA lawsuits when an appellate court was set to issue a controlling ruling that was likely to have a substantial effect on narrowing or streamlining the

---

[3] *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592-93 (1983); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795 (1978); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 (1972). *See also*, *e.g.*, *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072-73 (3d Cir. 1994) (declining to sever unconstitutional exception to ordinance regarding content of advertising signs, even though "the rest of the statute could surely function independently," because "[e]liminating the offending exception would mean that we would be requiring the State to restrict more speech than it currently does"); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) (criticizing the district court for invalidating "only the exemption" to a permit requirement because that leaves plaintiff "in a worse position than if the City had prevailed, and thus the permit requirement "must also be declared unconstitutional as it exists in this statutory framework").

claims and issues.[4]  Here, the potential outcome of the *AAPC* ruling could be to dispose of Plaintiff's TPCA claims.

### B.     Staying This Action Will Conserve Judicial Resources

A stay is appropriate at this time because of *AAPC's* potentially dispositive consequences for the case at hand.  Indeed, there is a distinct possibility that Plaintiff's claims will become null and void as a result of the Supreme Court's decision.  If that happens, "any judicial resources spent on this matter between now and then would essentially be to no avail."  *Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577, 2015 WL 5947669, *4 (W.D. Pa. Oct. 13, 2015); *see also Blackenship v.Trump, Jr., et al.*, 2:19-CV-00549, 2020 WL 748874, at *2 (S.D.W. Va. Feb. 13, 2020) (" . . . any resources devoted to the time-consuming and expensive discovery process would be fruitless.").  To paraphrase Judge Cooke, "the significant time, expense, and resources required to litigate this case on the merits will be for naught if the Supreme Court rules" that the same restrictions at issue in this lawsuit violate the First Amendment and are therefore unconstitutional and invalid.  *Boise*, 2015 WL 4077433 at *5 (internal quotation omitted).  Accordingly, it is in the best interests of judicial economy to conserve the Court's resources for those actions in which there is not a risk that a relatively imminent decision (by the end of June 2020) from the Supreme Court will undo any Court decisions and vitiate any costly and extensive motion practice, briefing, and discovery conducted by the litigants.

### C.     A Stay Will Benefit the Public Interest

The requested stay would also be in the public interest.  Moving forward with the Sword of Damocles-like situation of the Supreme Court ruling looming over the ensuing proceedings,

---

[4] *See, e.g.*, *Barnes v. CS Mktg. LLC*, No. 19-24218-CIV, 2020 WL 30373, *3 (S.D. Fla. Jan. 2, 2020); *Saleh v. Me Bath Spa Experience, LLC*, No. 17-CV-62322, 2018 WL 398325, *4 (S.D. Fla. Jan. 12, 2018); *Ricks v. Allied Interstate, LLC*, No. 3:16-CV-00205-HES-PDB, 2016 WL 4505173 (M.D. Fla. July 11, 2016); *Shahin v. Synchrony Fin., et al.*, No. 8:15-cv-02941-MSS-EAJ, 2016 WL 4502461 (M.D. Fla. Apr. 12, 2016); *Mackiewicz v. Nationstar Mortg., LLC*, Case No. 6:15-cv-00465,  2015 WL 11983233 (M.D. Fla. Nov. 10, 2015); *Tel. Sci.*, 2015 WL 7444409 at *3.

when it could dispose of the entire action, would not serve any party's or potential class member's interests. Not only would all of the parties suffer prejudice should this case not be stayed, but the public at large would, as well, particularly since"[it] is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Blackenship,* 2020 WL 748874, at *2 (quoting *United States v. Daily Gazette Co.*, No. CIV.A. 2:07-0329, 2007 WL 7575700, at *2 (S.D.W. Va. Oct. 18, 2007)) . *See also*, *e.g.*, *Southstar Capital Group, I, LLC v. 1662 Multifamily LLC*, No. 6:18-CV-1453-ORL-40DCI, 2019 WL 3752892, *5 (M.D. Fla. Aug. 8, 2019) (finding stay appropriate because "a stay would serve the public interest by preserving judicial economy and ensuring the orderly progression of this litigation."); *Lopez v. Miami-Dade County*, 145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015) (staying proceedings because "there is a public interest in judicial economy and efficiency"). Absent a stay, those limited judicial resources might ultimately be wasted. The public interest would be better served by entering a brief stay of most likely no more than five months in this case and allow the Court's time and resources to be directed toward the other matters on its case docket during the stay, particularly when any time spent on this case in the next five months may end up being for naught.

### D.     None of the Parties Will Suffer a Hardship or Prejudice from a Stay

Should a stay be granted, no prejudice will befall any party. While Plaintiff may argue he has the right to the speedy resolution or his claims, "having to wait" even as much as "eight to nine months to continue litigation is not, itself, sufficiently prejudicial to outweigh the very plain benefits of staying the case, particularly when the issues pending at the Supreme Court go to this Court's power to hear the case." *Duchene*, 2015 WL 5947669 at *4. Indeed, courts generally have found that a stay of up to a year does not constitute undue prejudice. *See Jean v. City of Dallas, Texas*, No. 3:18-CV-2862-M, 2019 WL 4597580, *3 (N.D. Tex. Sept. 22, 2019); *Quinn-*

*White v. Novartis Pharm. Corp.*, No. CV 16-4300 PSG (AGRx), 2016 WL 11519285, *4 (C.D. Cal. Oct. 7, 2016); *Boise*, 2015 WL 4077433 at *6; *Cellectis S.A. v. Precision Biosciences, Inc.*, 5:08-CV-00119-H, 2010 WL 3430854, at *4 (E.D.N.C. Aug. 31, 2010).

The hardship to PMC if the case continues and the lack of hardship to Plaintiff and putative class members if the case is stayed further weigh in favor of a brief stay of the proceedings in this case until the Supreme Court issues its ruling in *AAPC*.

### CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.02

Counsel for Defendant conferred with counsel for Plaintiff regarding the requested relief. The parties were not able to resolve this dispute and Plaintiff's counsel advised that "it is premature to meet and confer regarding the proposed motion while defendant's other motions are pending".

### CONCLUSION

The Court should stay this case pending the Supreme Court's decisions in *AAPC* to lessen the Court's and the parties' litigation burden, especially in light of the risk the Court and the parties run by continuing to litigate this action in the face of a Supreme Court decision that could dispose of this action entirely. It is in the best interests of this Court's available judicial resources, the public interest, and the parties' respective litigation burdens to await decision from the Supreme Court in *AAPC* to ascertain the decision's disposition upon this action. Accordingly, Defendant requests that this Court grant the Motion to Stay pending the Supreme Court's decision in *AAPC*, and ordering such further relief as this Court deems just and proper.

**TURNER PADGET GRAHAM & LANEY, PA**

*/s/*John S. Wilkerson, III_____
John S. Wilkerson, III (Federal Bar. No.: 4657)
Post Office Box 22129

        Charleston, SC 29413
Telephone: 843-576-2801
Facsimile: 843-577-1649
Email: jwilkerson@turnerpadget.com

Jeffrey A. Backman (Florida Bar No.: 662501)
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120
Facsimile: 954.343.6958
Email: jeffrey.backman@gmlaw.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant, PMC Home & Auto Insurance Agency, LLC*

10